UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    *v.*<br><br>MICHAEL VADAKIN | Criminal No. 3:9cr010(JBA)<br><br>August 17, 2020 |

**RULING DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

Defendant Michael Vadakin "requests that the Court reduce his sentence to time served and order his immediate release from the custody of the Bureau of Prisons," pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136 (2020). (Emerg. Mot. for Compassionate Release [Doc. # 116] at 1.)[1] The Government opposes. ([Doc. # 126].) For the reasons that follow, Defendant's motion is DENIED.

**I.  Background**

Defendant Michael Vadakin was convicted by his guilty plea on one count of Information, charging possession of child pornography, in violation of 18 U.S.C. § 2252(a)(5)(B) and (b)(2). On March 4, 2020, Defendant was sentenced to one year and one day of imprisonment, a significant departure from his U.S.S.G. § 5El.2(c)(3) range of 78 to 97 months, followed by five years of supervised release. (Judgment [Doc. # 113]); (Plea Agreement [Doc. # 86] at 6). Currently incarcerated at Devens FMC, Defendant is scheduled to be released from Bureau of Prisons ("BOP") custody on January 3, 2021. FIND AN INMATE, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last accessed August 12, 2020).

---

[1] On March 19, 2020, in response to the COVID-19 pandemic, Congress enacted the CARES Act, which contemplated an expansion to the BOP's authority to place prisoners on home confinement.

As part of his plea agreement with the Government, Defendant stipulated to the following offense conduct. (Plea Agreement at 11.) Between June and December of 2018, Defendant accessed the smartphone application "Kik," and engaged in chat activity with other users. (*Id.*) At various times, he reposted images of child pornography on the application and possessed a number of child pornography images on a tablet, along with two videos of male toddlers being sexually exploited by an adult. (*Id.*)

Defendant is 29 years old and has certain "documented medical conditions, including morbid obesity."[2] (Def.'s Mem. Supp. Mot. for Compassionate Release [Doc. # 117] at 1.) Defendant has reported a history of hypertension, but lacks any documented diagnosis and "stopped medication" after listing it on his prison intake form. (Gov't Opp. [Doc. # 126.]).

The Court assumes the parties' familiarity with the ongoing COVID-19 pandemic and its spread from person-to-person, especially between those who are in close contact with one another. How COVID-19 Spreads, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fprepare%2Ftransmission.html (last accessed July 23, 2020).

The Centers for Disease Control and Prevention ("CDC") advises that "[p]eople of any age with the following conditions are at increased risk of severe illness from COVID-19: Cancer[,] Chronic kidney disease[,] COPD (chronic obstructive pulmonary disease)[,] Immunocompromised state (weakened immune system) from solid organ transplant[,] Obesity (body mass index [BMI] of 30 or higher)[,] Serious heart conditions, such as heart

---

[2] Defendant moves to seal his medical records attached as Exhibit A to the Memorandum in Support of his Emergency Motion for Compassionate Release. (Mot. to Seal [Doc. # 127].) No opposition has been filed. The Court finds that Defendant's privacy interests in the confidential medical information contained in Exhibit A substantially outweigh the public's right of access to that document, and thus Defendant's Motion to Seal is granted.

failure, coronary artery disease, or cardiomyopathies[,] Sickle cell disease[, and] Type 2 diabetes mellitus." PEOPLE WITH CERTAIN MEDICAL CONDITIONS, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 23, 2020). The CDC also warns that "[b]ased on what we know at this time, people with the following conditions might be at an increased risk for severe illness from COVID-19: Asthma (moderate-to-severe)[,] Cerebrovascular disease (affects blood vessels and blood supply to the brain)[,] Cystic fibrosis[,] Hypertension or high blood pressure[,] Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines[,] Neurologic conditions, such as dementia[,] Liver disease[,] Pregnancy[,] Pulmonary fibrosis (having damaged or scarred lung tissues)[,] Smoking[,] Thalassemia (a type of blood disorder)[, and] Type 1 diabetes mellitus." *Id.* Moreover, "[a]mong adults, the risk for severe illness from COVID-19 increases with age, with older adults at highest risk." OLDER ADULTS, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last accessed July 23, 2020).

Defendant was transferred from Fairton FCI to Devens FMC on June 23, 2020. (Def.'s Suppl. Mot. for Compassionate Release [Doc. # 124] at 1.) Prior to that, on June 1, he had submitted a request to the Warden at Fairton FCI for a reduction in sentence based on his concerns about COVID-19. (*Id.*) At that same time, Defendant submitted his initial Emergency Motion for Compassionate Release to the Court, which was denied, without prejudice, for failing to fulfill the exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A). ([Doc. # 123.]) As of July 1, the Warden at Fairton FCI had yet to respond to Defendant's request. (Def.'s Suppl. Mot. at 1.) Defendant then timely renewed this Motion for Compassionate Release on July 1, 2020. (*Id.*) The Government opposed Defendant's request on August 5, 2020. (Gov't Opp. at 1.)

3

As of August 12, 2020, forty-nine Devens FMC inmates had tested positive for COVID-19, and two had died from the virus. COVID-19, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last accessed August 12, 2020). One inmate and two staff members continue to suffer from "[c]onfirmed [a]ctive [c]ases" of COVID-19 at the prison. *Id.*

## II. Discussion

Defendant moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides,

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Although incarcerated persons previously could only seek compassionate release upon motion of the BOP, the First Step Act of 2018 amended that provision to permit prisoners to seek relief directly from the courts upon satisfaction of certain exhaustion requirements.

Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that

> (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

Application Note 1 to that Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies

4

that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

Defendant argues that extraordinary and compelling reasons exist which justify his requested sentence reduction. Specifically, Defendant argues that his "morbid obesity, and hypertension place him at extremely high risk for severe illness or death should he contract COVID-19." (Def.'s Mem. at 21.) While the Government acknowledges that Defendant's obesity "may be deemed an extraordinary and compelling reason that could justify compassionate release," it argues that this one factor is not sufficiently compelling in this case. (Gov't Opp. at 9.) In addition, the Government challenges the assertion that Defendant suffers from hypertension and argues that, regardless, the CDC guidelines offer only "limited data" to suggest that hypertension actually increases the risk of severe illness due to COVID-19. (*Id.* at 10.)

The inquiry does not end there. Rather, the Court must also consider the factors set forth in 18 U.S.C. § 3553(a) and determine whether Defendant is a "danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13; *see* 18 U.S.C. § 3582(c)(1)(A). The § 3553(a) factors include, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to protect the public from further crimes of the defendant."

Defendant argues that the time he "has already served is sufficient to satisfy the purposes of sentencing" under § 3553(a) because "[t]he purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness." (Def.'s Mem. at 24.) Defendant also argues that the § 3553(a) factors support his requested sentence reduction because of his deep remorse, lack of criminal record, struggles with depression and inability "to obtain [court-ordered] behavioral health treatment" from the prison during

5

lockdown. (*Id.* at 25.) Defendant states that he "continues to acutely feel the gravity of the offense and the harm he caused . . . grappl[ing] – concretely – with the trauma he caused and its potential after-effects for the minors involved." (*Id.*)

Defendant cites a forensic psychiatric and psychosexual evaluation made in support of sentencing by Dr. Alexander S. Bardey, M.D. in the late fall of 2019. (*Id.*); (*see also* Ex. B (Def. Mem. Aid Sent. [Doc # 107.])). Dr. Bardey noted that Defendant's "behavior, though concerning, was a manifestation of an underlying depression and feelings of hopelessness and worthlessness, exacerbated by emotional immaturity." (Def.'s Mem. at 25-26.) While Defendant alleges that he spent "[t]he long periods of pre-trial and presentence [] not only reckoning with the harm he caused, but also planning for how to rehabilitate himself so that this conduct never occurs again," (*id.* at 26), the Court notes that in the "fifteen months [] he remained on bond," (*id.* at 2), there is no record of his attempting to engage in any active steps towards rehabilitation, including attending sex-offender therapy groups or seeking individualized therapy to address his mental health concerns. This lack of initiative to engage with rehabilitative services prior to incarceration undercuts his claimed embrace of treatment upon release.

Defendant argues that therapy programs are presently unavailable at Devens FMC due to restrictions because of COVID-19. (*Id.* at 27.) However, the Government asserts that Defendant "declined intake and participation in the [sex-offender] program" and "has decided to avoid sex offender treatment" while incarcerated. (Gov't Opp. at 11.) Defendant asserts that "his treatment needs are best met by permitting him to transition to supervised release," where he may engage with the "many treatment providers [] continuing to provide treatment via phone and video during the COVID-19 crisis." (Def.'s Mem. at 24.) However, the Government argues that, if released, Defendant will "receive [only] a telephone call from a provider potentially once a week or once every two weeks." (Gov't Opp. at 11.) Considering

the complexity of the offense, "[t]his approach is a poor substitute for the fulsome sex offender treatment program designed for individuals like [Defendant], which includes, *inter alia*, valuable group sessions." (*Id.*) The Government and Defendant paint two very different pictures of the treatment presently available to Defendant. Regardless, given Defendant's dearth of history of treatment prior to incarceration, the Court lacks persuasive assurances that he will actively participate in treatment upon release, in whatever manner it may be offered.

Defendant also claims that, pursuant to 18 U.S.C. § 3624(c)(2), he is eligible for prerelease custody to home confinement as of September 3, 2020, thereby minimizing any sentencing disparities between him and similarly situated defendants. (Def.'s Mem. at 24.) However, § 3624(c)(2) authorizes placement on home confinement only "for the *shorter* of 10 percent of the term of imprisonment of that prisoner *or* 6 months." 18 U.S.C. § 3624(c)(2) (emphasis added). This type of custody is at the discretion of the BOP and does not impact the length of Defendant's sentence as determined by the Court. 18 U.S.C. § 3624(g)(2)(a). Therefore, given that the Defendant's sentence is one year and one day, the statute permits Defendant to be placed on home confinement for only 10 percent of his term, or 36.6 days. The earliest Defendant could possibly be sent home is November 28, 2020, not the September 3rd date proferred by the defense. To place Defendant on home confinement now would mean he would serve a mere four-and-a-half months, or about one-third, of his year-long sentence in prison, marking a substantial deviation from similarly situated defendants.

The Court harbors significant concerns about the potential danger Defendant poses to the community, given his lack of treatment, technological prowess to repeat the crime while on home confinement, and short period of incarceration. While Defendant's obesity does increase his risk of severe illness, it is unclear if he has any other compromising conditions that would predispose him to significant risk. Moreover, his release plan includes

working at a grocery store in the town of Derby, CT, which has had 174 confirmed cases and 5 deaths due to COVID-19. CONNECTICUT TOWNS WITH CASES OF COVID-19, CONNECTICUT'S OFFICIAL STATE WEBSITE, https://portal.ct.gov/coronavirus (last accessed August 12, 2020). It is unclear if his work in a high traffic environment, where there has been a significant outbreak, is safer than his retention at a facility where there are only 3 active community cases. Thus, although the Court recognizes the compromised nature of Defendant's health condition, the Court concludes that a reduction of Defendant's sentence is not warranted in light of the continued risk of danger to the community he poses. *See* 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a).

**Conclusion**

For the foregoing reasons, Defendant's Renewed Motion for Compassionate Release [Doc. # 124] is DENIED. Defendant's Motion to Seal [Doc. # 127] is GRANTED.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 17th day of August 2020.

8